**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION**

| | |
|---|---|
| DAVID STULTS and BARBARA STULTS,<br><br>Plaintiffs,<br>vs.<br><br>INTERNATIONAL FLAVORS AND FRAGRANCES, INC., and BUSH BOAKE ALLEN, INC.,<br><br>Defendants. | No. C 11-4077-MWB<br><br>**MEMORANDUM OPINION AND ORDER REGARDING PLAINTIFFS' POST-TRIAL MOTIONS FOR NEW TRIAL AND FOR JUDGMENT AS A MATTER OF LAW** |

_____

This products liability action, seeking damages for a lung injury to a consumer of microwave popcorn allegedly caused by diacetyl in the popcorn's butter flavoring, resulted in a defense verdict on August 18, 2014, after a four-day jury trial. This case is now before me on the disappointed plaintiffs' post-trial motions for a new trial and for judgment as a matter of law.

Somewhat more specifically, in this diversity action under Michigan products liability law, plaintiffs David Stults and Barbara Stults, husband and wife, alleged that David developed "popcorn lung"—more specifically, *bronchiolitis obliterans* or BO—by consuming multiple bags of microwave popcorn and inhaling the fumes or vapors from them daily for several years. The remaining defendants, International Flavors & Fragrances Inc., (IFF) and its wholly-owned subsidiary, Bush Boake Allen, Inc. (BBA), manufactured butter flavorings containing diacetyl and sold them to microwave popcorn manufacturers, including ConAgra Foods, Inc. The Stultses asserted claims of strict liability, negligence, breach of warranty, and loss of consortium, all arising from David's

respiratory injury allegedly resulting from his exposure to popcorn with butter flavorings containing diacetyl. After rulings on dispositive motions and my July 29, 2014, Order Clarifying Claims Proceeding To Trial (docket no. 322), however, this case proceeded to trial only on the Stultses' "breach of implied warranty" and "loss of consortium" claims. In addition to these claims, the jury was instructed on the Stultses' contention that the defendants' conduct at issue in their "breach of implied warranty" claim caused David a permanent loss of a vital bodily function and was reckless, and on the defendants' affirmative defenses (denominated "specific defenses" in the jury instructions) of "sole proximate cause" and "fault of others." In the Verdict Form, the jurors found for the defendants on the Stultses' "breach of implied warranty" claim and, consequently, did not reach their "loss of consortium" claim or the defendants' affirmative defenses. Verdict Form (docket no. 347).

The Stultses have now filed two motions to overturn the verdict against them: (1) their September 17, 2014, Motion For A New Trial (docket no. 357); and (2) their September 17, 2014, Renewed Motion For Judgment As A Matter Of Law Or In The Alternative Motion For New Trial (docket no. 358). The defendants filed Resistances (docket nos. 359 and 360) to these Motions on October 1, 2014, and the Stultses filed a Reply Brief (docket no. 361) in further support of their Motion For New Trial on October 8, 2014. My crowded schedule has not permitted the timely scheduling of oral arguments on the Stultses' post-trial motions, and I find the parties' written submissions to be adequate to resolve the issues presented. Therefore, the Stultses' post-trial motions are deemed fully submitted on the written submissions. I will consider these motions in turn.

First, in their Motion For A New Trial, the Stultses contend that their right to a fair trial was violated, because the jury heard the entire qualifications and opinions of one of the defendants' experts, Dr. Meehan. They contend that, although I eventually struck all of Dr. Meehan's testimony for failure to conduct a proper differential diagnosis,

I did not give any reason for exclusion of his testimony. The Stultses argue that these circumstances led the jurors to believe that the testimony of this first-time expert witness was only excluded for failure to disclose additional research, which was the only objection to his testimony that the jurors heard. They contend that their right to a fair trial was also violated, because the jurors heard improper testimony by another defense witness, Ms. Robbins, attacking the credibility of David's testimony about putting his nose right up to a freshly popped bag of popcorn, even though I struck that testimony and explained to the jurors that I was doing so on the ground that it was irrelevant because of differences between the brand of popcorn that Ms. Robbins had tested and the brands that David had popped. The Stultses argue, in essence, that the jurors could not disregard testimony that they had already heard. The Stultses also argue that, once the improper evidence is taken out of the case, the verdict is against the weight of the evidence. They also argue that they are entitled to a new trial, because Dr. Wolters was allowed to testify. In the alternative, they argue that they are entitled to an evidentiary hearing, because they have pointed to evidence that the jurors considered and believed the improper testimony of Dr. Meehan.

The defendants respond that the Stultses actually "won" at trial on the issues presented, because I excluded Dr. Meehan's testimony in its entirety and excluded the pertinent part of Ms. Robbins's testimony. They contend that the Stultses failed to make any objection to my instruction when I excluded Dr. Meehan's testimony and failed to seek a mistrial at that time. They also point out that the Stultses professed themselves satisfied during trial with my instruction explaining why the pertinent part of Ms. Robbins's testimony was stricken. They also argue that the Stultses cannot show that they were prejudiced by the stricken testimony, because the jurors are presumed to follow the court's instructions to disregard evidence. They also argue that there was no prejudice, because there was no deliberate or pervasive attempt to get inadmissible

3

evidence before the jury, the court took curative action, and the lack of any damage award does not suggest any prejudicial effect. Rather, the defendants argue that the verdict suggests that the jurors accepted the credibility of other evidence that defeated the Stultses' causation theory. Specifically, they point to Dr. Wolters's testimony that diacetyl in microwave popcorn could not have been the cause of David's injuries, because those injuries did not manifest themselves until years after diacetyl was no longer used as a butter flavoring in microwave popcorn that he consumed. They also argue that Dr. Wolters's testimony was properly admitted. The defendants argue, almost as an afterthought, that Dr. Meehan's testimony should not have been stricken, because he properly "ruled in" other causes for David's lung injury, making it unnecessary for him to "rule out" diacetyl exposure. Finally, they argue that the Stultses' attack on the jurors' consideration of Dr. Meehan's and Ms. Robbins's testimony is improper.

In reply, the Stultses argue that they did not "win" the evidentiary issues on which their Motion For A New Trial is based, because they were denied any explanation of why Dr. Meehan's testimony was excluded and were also denied the opportunity to cross-examine him. They also contend that there is no requirement in a *civil* case to seek a mistrial to preserve a challenge to improper evidence. They also contend that Dr. Meehan's testimony was not admissible, because he did not consider diacetyl exposure in a proper differential diagnosis.

"'[T]he granting or denial of a new trial is a matter of procedure governed by federal law.'" *Bank of Am., N.A. v. JB Hanna, L.L.C.*, ___ F.3d ___, ___, 2014 WL 4397062, *8 (8th Cir. Sept. 8, 2014) (quoting *Brown v. Royalty*, 535 F.2d 1024, 1027 (8th Cir. 1976)). A litigant must seek a new trial in post-trial motion under Rule 59 of the Federal Rules of Civil Procedure in order to seek a new trial on appeal. *Id.* Rule 59 states that a new trial may be granted after a jury trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court." FED. R. CIV. P.

4

59(a)(1)(A). The Stultses are correct that a court has the discretion to grant a new trial, *inter alia*, if counsel for the opposing party conveyed improper information to the jury that prejudiced the moving party. *See Blair v. Wills*, 420 F.3d 823, 829-30 (8th Cir. 2005) (citing *Silbergleit v. First Interstate Bank of Fargo*, 37 F.3d 394, 398 (8th Cir. 1994) (citing *Sanders–El v. Wencewicz*, 987 F.2d 483, 484 (8th Cir. 1993)). They are also correct that "[c]ounsel's misconduct may be such that a district court cannot overcome its prejudicial effect by admonishing the jury or rebuking counsel; in such case a court should grant a new trial." *Id.*

In essence, the Stultses argue that the defendants' counsel intentionally "sand-bagged," by assuring me that Dr. Meehan would testify that he conducted a proper differential diagnosis and that an adequate foundation would be laid for his testimony, but then did not ask the appropriate questions about whether Dr. Meehan had "ruled out" diacetyl exposure until the end of his testimony. Dr. Meehan's answers show that he did not. The explanation for what happened in Dr. Meehan's testimony is perplexing—especially regarding the failure of the entire defense team to disclose the additional research performed by Dr. Meehan and then their failure to be exactly forthcoming as to how that happened. Nevertheless, I am unwilling to find that defense counsel did anything intentionally misleading regarding the failure of Dr. Meehan to testify on direct examination that he had "ruled out" diacetyl. Lead defense counsel was always very forthcoming and extremely reasonable throughout the trial. He bent over backwards to accommodate both me and plaintiffs' counsel, even when plaintiffs' counsel made unreasonable requests. For example, when lead defense counsel informed me, prior to opening statements, that he would not be needing or using all of the time allocated to him for his opening, plaintiffs' counsel immediately requested that he be given the time to add on to the time for his opening—which was a request that I found incredibly zealous, but equally unreasonable. Before I rejected this request out-of-hand, I asked for lead

5

defense counsel's position.  Somewhat shockingly to me, he responded that the request by plaintiffs' counsel was fine with him.  Consequently, I gave plaintiffs' counsel the extra time.  Based on my extensive experience as a federal trial judge, I suspect not one out of a hundred trial lawyers on either side would have agreed to this.  Lead defense counsel acted this way throughout the trial.  I am very hard-pressed to believe that, given his über cooperative nature and über reasonable approach to issues that arose in trial, he would have intentionally misled anyone.

Ultimately, I do not agree that the Stultses are entitled to a new trial on the ground that the jurors heard Dr. Meehan's testimony, even though that testimony was eventually stricken.  First, because the Stultses' counsel did not object to the adequacy or sufficiency of the curative instruction that I gave when I struck Dr. Meehan's testimony, they have waived that objection, and I do not find that it was plainly erroneous (or prejudicial) not to give an explanation of the specific reasons for striking Dr. Meehan's testimony.  *See Hosrtmyer v. Black & Decker, Inc.*, 151 F.3d 765, 771 (8th Cir. 1998) (if a party fails to object to the sufficiency of a curative instruction, the objection is waived absent plain error).  Specifically, I struck Dr. Meehan's testimony in its entirety, and jurors are presumed to follow instructions to disregard evidence stricken by the court.  *See, e.g., Hiser v. XTO Energy, Inc.*, ___ F.3d ___, ___, 2014 WL 49365, *2 (Oct. 3, 2014). Second, the Eighth Circuit Court of Appeals has long recognized that it is harmless error to *admit* improper evidence if that improper evidence is cumulative of matters shown by admissible evidence.  *See Winter v. Novartis Pharm. Corp.*, 739 F.3d 405, 411 (8th Cir. 2014) (citing *Smith v. Firestone Tire & Rubber Co.*, 755 F.2d 129, 132 (8th Cir. 1985)). Here, there was sufficient other evidence in the case, including Dr. Wolters's testimony, to support a rejection by the jurors of the Stultses' causation arguments.  Finally, the Stultses' attempt to impeach the jury's verdict, by using post-trial interviews, ostensibly conducted for the purpose of learning about the performance of counsel and witnesses,

6

to try to show that the jurors considered improper evidence is, itself, improper, because Dr. Meehan's improper testimony was not "extraneous"; it was presented and stricken in the course of the trial. FED. R. EVID. 606(b)(2)(A).

As to Ms. Robbins's stricken testimony about whether or not it was possible to inhale popcorn fumes from a hot bag of popcorn right out of the microwave, I gave a thorough explanation to the jurors of the reasons that testimony was irrelevant. Again, the Stultses' counsel did not object to that explanation at the time, so that the objection is waived. *See Horstmyer*, 151 F.3d at 771. Jurors are presumed to have followed the instruction to disregard this evidence, *Hiser*, ___ F.3d at ___, 2014 WL 49365 at *2, and the Stultses' attempt to impeach the jury's verdict with information gleaned from post-trial interviews is improper, because Ms. Robbins's improper testimony was not "extraneous," but was presented and stricken in the course of trial. FED. R. EVID. 606(b)(2)(A).

I also conclude that the Stultses are not entitled to a new trial on the ground that the jurors heard Dr. Wolters's testimony. My assessment at trial was that the reasoning and methodology underlying Dr. Wolters's challenged opinions were scientifically valid and that his reasoning and methodology could be applied to the facts in issue. *See Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 592-93 (1993) (first step in the court's "gatekeeper" function under Rule 702); *Kudabeck v. Kroger Co.*, 338 F.3d 856, 860 (8th Cir. 2003) (same). I was, and remain, convinced that Dr. Wolters's testimony provided information beyond the common knowledge of the trier of fact regarding the causes and consequences of bronchiolitis obliterans and the consequences of some of the treatments for it. *See Daubert*, 509 U.S. at 591 (explaining that expert testimony assists the trier of fact when it provides information beyond the common knowledge of the trier of fact). I also remain convinced that striking his testimony would have "invade[d] the province of the jury, whose job it is to decide issues of credibility and to determine the

weight that should be accorded evidence." *United States v. Vesey*, 338 F.3d 913, 916-17 (8th Cir. 2003). This is a case in which vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof were not only traditional, but appropriate means of attacking what the Stultses contend are shaky opinions by this expert. *Daubert*, 509 U.S. at 595-96; *Vesey*, 338 F.3d at 917. Indeed, the Stultses actually used at trial some of the purported "*Daubert* grounds" that they now reiterate in their attempts to impeach Dr. Wolters's opinions. The Stultses' continued unhappiness with Dr. Wolters's testimony is not sufficient to demonstrate a miscarriage of justice warranting a new trial.

The Stultses' Motion For A New Trial is denied.

I turn, next, to the Stultses' Renewed Motion For Judgment As A Matter Of Law Or In The Alternative Motion For New Trial (docket no. 358). The Stultses seek judgment as a matter of law on the defendants' specific defenses and on certain elements or parts of elements of their "breach of implied warranty" claim, a new trial on causation and damages alone, or, in the alternative, a new trial. As to the "sole proximate cause" defense, the Stultses contend that there was no evidence properly before the jury that David's disease was caused by anything other than diacetyl exposure and, more specifically, that Dr. Wolters's testimony does not constitute such evidence. They also argue that there was no evidence of "fault of others," because there was no evidence that the popcorn manufacturers designed butter flavorings, and no evidence about other diacetyl suppliers. The Stultses argue that they are (and were) entitled to judgment as a matter of law on parts of their "breach of implied warranty" claim, because Mr. Bates conceded that diacetyl fumes emitted from heated butter flavorings are potentially hazardous to breathe and that diacetyl-free butter flavorings, which did not emit fumes that were potentially hazardous to breathe, were available for use in microwave popcorn. They also argue that Mr. Bates conceded that butter flavorings containing diacetyl were

8

in Orville Redenbacher Butter microwave popcorn produced by ConAgra at the time that David was injured. In the alternative, the Sultses argue that they are entitled to a new trial on these and all of the other grounds stated in their post-trial motions.

In their Resistance, the defendants assert that the Stultses suffered no prejudice from any failure to grant judgment as a matter of law on the defendants' defenses, because the jurors never reached those defenses, but rejected the Stultses' "breach of implied warranty" claim on its elements. They also argue that Dr. Wolters provided admissible testimony that diacetyl in microwave popcorn was not the cause of David's injuries, an autoimmune disease was. They point out that Dr. Wolters supported his opinion by noting David's "constellation of symptoms" and the fact that those symptoms did not appear until years after diacetyl was no longer in the butter flavorings for the microwave popcorn he ate. Thus, they contend that the the "sole proximate cause" defense was properly submitted. They argue that there was also evidence to support the "fault of others" defense. They point out that the pertinent instruction did not confine the fault of others to a "design defect," but included warning defects or breach of warranty, as well. They also point out that Mr. Bates provided evidence that ConAgra had alternative flavorings available, but chose flavorings containing diacetyl, and that Dr. Egilman, one of the Stultses' experts, also testified that ConAgra and another manufacturer were at fault. The defendants also resist the Stultses' motion as it pertains to elements of the Stultses' "breach of implied warranty" claim, on the ground that Mr. Bates conceded only that diacetyl fumes emitted from heated butter flavorings are potentially hazardous to breathe *for butter flavoring workers*, because of the high concentrations that they encountered. They also contend that Mr. Bates's testimony that there were non-diacetyl flavorings available, *but no one was interested in using them*, generated a fact question on that issue. They also contend that there was sufficient evidence for the jurors to conclude that, because of the timing of David's symptoms, diacetyl was not in the

9

flavorings for microwave popcorn at the time of David's injury. The defendants argue that, even supposing that the Stultses were entitled to judgment as a matter of law on each of the issues that they challenge, the Stultses cannot show prejudice warranting a new trial, because there were fact questions on other elements of the Stultses' claim on which the evidence is sufficient to support a verdict for the defendants.

Rule 50(b) simply provides for renewal post-trial of a pre-verdict motion for judgment as a matter of law; it does not change the standards for granting such a motion, which are stated in Rule 50(a). FED. R. EVID. 50(a) and (b). As the Eighth Circuit Court of Appeals has explained,

> Judgment as a matter of law is appropriate when "a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Fed.R.Civ.P. 50(a)(1). The court should review all of the evidence in the record and draw all reasonable inferences in favor of the nonmoving party, without making credibility determinations or weighing the evidence. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000).

*Duban v. Waverly Sales Co.*, 760 F.3d 832, 835 (8th Cir. 2014). To put it another way, judgment as a matter of law "is appropriate 'when all the evidence points one way and is susceptible of no reasonable inferences sustaining the position of the non-moving party.'" *Hortica-Florists' Mut. Ins. Co. v. Pittman Nursery Corp.*, 729 F.3d 846, 854 (8th Cir. 2013) (quoting *Ehrhardt v. Penn Mut. Life Ins. Co.*, 21 F.3d 266, 269 (8th Cir. 1994)).

I will assume, without deciding, that I should consider whether the Stultses are entitled to judgment as a matter of law on defenses that the jurors never reached. I conclude that the Stultses have failed to show that a reasonable jury would not have a legally sufficient evidentiary basis to find for the defendants on the challenged defenses. *See Duban*, 760 F.3d at 835. As the defendants point out, Dr. Wolters did provide

admissible evidence of an autoimmune cause for David's BO, rather than diacetyl exposure, thus providing sufficient evidentiary support for the "sole proximate cause" defense. Dr. Wolters also provided admissible evidence that diacetyl exposure was not the cause of David's BO, because his symptoms did not appear until years after diacetyl was no longer in the butter flavorings of microwave popcorn that he consumed. As to the "fault of others" defense, the defendants are correct that the pertinent instruction did not confine the fault of others to a "design defect," but included warning defects and breach of warranty, as well. The defendants are also correct that Mr. Bates provided evidence that ConAgra had alternative flavorings available, but chose flavorings containing diacetyl, and that Dr. Egilman, one of the Stultses' experts, also testified that ConAgra and another manufacturer were at fault. Because I cannot weigh the evidence on a renewed motion for judgment as a matter of law, *see id.*, I find that these defenses were submissible. To put it another way, I cannot say that, on either of these specific defenses, "'all the evidence points one way and is susceptible of no reasonable inferences sustaining the position of the [defendants],'" which makes judgment as a matter of law on these defenses inappropriate. *Hortica-Florists' Mut. Ins. Co.*, 729 F.3d at 854 (quoting *Ehrhardt*, 21 F.3d at 269).

Turning to the parts of the Stultses' "breach of implied warranty" claim on which they contend that they are entitled to judgment as a matter of law, I also reject their arguments. Again, I conclude that the Stultses have failed to show that a reasonable jury would not have a legally sufficient evidentiary basis to find for the defendants on the challenged parts of the Stultses' "breach of implied warranty" claim. *See Duban*, 760 F.3d at 835. The defendants are correct that Mr. Bates conceded only that diacetyl fumes emitted from heated butter flavorings are potentially hazardous to breathe *for butter flavoring workers*, because of the high concentrations that they encountered, not that they are potentially hazardous in any and all circumstances or, more specifically, that they are

11

potentially hazardous to ordinary consumers of microwave popcorn. The defendants are also correct that Mr. Bates's testimony that there were non-diacetyl flavorings available, *but no one was interested in using them*, was sufficient to generate a fact question on that issue. Finally, the defendants are correct that there was sufficient evidence for the jurors to conclude that, because of the timing of David's symptoms, diacetyl was not in the flavorings for microwave popcorn at the time of David's injury. Thus, I cannot say that, on any of these challenged parts of the "breach of implied warranty" claim, "'all the evidence points one way and is susceptible of no reasonable inferences sustaining the position of the [defendants],'" which makes judgment as a matter of law on these issues inappropriate. *Hortica-Florists' Mut. Ins. Co.*, 729 F.3d at 854 (quoting *Ehrhardt*, 21 F.3d at 269). Furthermore, the denial of judgment as a matter of law on these issues is not prejudicial, because the Stultses concede that there were genuine issues of material fact for the jury to decide on other elements of the "breach of implied warranty" claim, and there was sufficient evidence supporting a verdict for the defendants on those elements.

Finally, in the alternative, even if I were to weigh the evidence, I would not find that the verdict on the "breach of implied warranty" claim, considering all of the elements of that claim, is so against the weight of the evidence as to warrant a new trial on that claim. *Bank of Am., N.A.*, ___ F.3d at ___, 2014 WL 4397062 at *8 (a new trial is warranted, *inter alia*, when the verdict is against the great weight of the evidence, so as to constitute a miscarriage of justice).

The Stultses' Renewed Motion For Judgment As A Matter Of Law Or In The Alternative Motion For New Trial is also denied.[1]

---

[1] To the extent that I may not have expressly addressed particular grounds or arguments for a new trial or judgment as a matter of law raised by the Sultses, I have considered those grounds and arguments and rejected them.

THEREFORE, upon the foregoing,

1. The Stultses' September 17, 2014, Motion For A New Trial (docket no. 357) is **denied**; and

2. The Stultses' September 17, 2014, Renewed Motion For Judgment As A Matter Of Law Or In The Alternative Motion For New Trial (docket no. 358) is **denied**; and

3. The Verdict and Judgment shall stand.

**IT IS SO ORDERED**.

**DATED** this 23rd day of October, 2014.

_____
MARK W. BENNETT
U.S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA